# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 23, 2020

Lyle W. Cayce
Clerk

No. 19-30772

Antonio M. Jackson,

*Petitioner—Appellant*,

*versus*

Darrel Vannoy, Warden, Louisiana State Penitentiary,

*Respondent—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 1:19-CV-665

ORDER:

Mandatory life imprisonment without possibility of parole is the only punishment authorized by Louisiana's second-degree murder statute. The United States Supreme Court, however, has held that the Constitution prohibits the imposition of that sentence on juvenile offenders. *Miller v. Alabama*, 567 U.S. 460, 465 (2012). While the Constitution does not completely rule out life-without-parole sentences for the worst juvenile offenders, it does require sentencing discretion to account for a juvenile's lessened culpability and potential for rehabilitation. *Id.* at 479–80. For those juvenile offenders who received such an unconstitutional sentence before the Supreme Court announced this rule, the state must provide consideration for

parole eligibility or resentencing. *Montgomery v. Louisiana*, 136 S. Ct. 718, 736 (2016).

But can a juvenile offender constitutionally be resentenced under a criminal statute that, like Louisiana's, authorizes no lesser, alternative punishment? That is the essential question for which Petitioner Antonio M. Jackson seeks a certificate of appealability here.

I.

Two-dozen years ago, a Louisiana jury convicted Jackson of one count of second-degree murder and one count of manslaughter. *State v. Jackson*, 243 So. 3d 1093, 1095 (La. Ct. App. 2017). For the former, he received the then-mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence; for the latter, he was sentenced to 40 years at hard labor. *Id.* The state court ordered that Jackson serve the sentences consecutively. *Id.* The Louisiana appellate court affirmed the convictions and sentences on direct appeal. *State v. Jackson*, 707 So. 2d 990, 993 (La. Ct. App. 1997). At the time of his crimes, Jackson was 17 years old. *Jackson*, 243 So. 3d at 1095.

In the years since, the United States Supreme Court has issued two decisions bearing on the constitutionality of Jackson's mandatory sentence of life imprisonment without parole—and Jackson has tried to avail himself of each. First, in *Miller v. Alabama*, the Court held that "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" 567 U.S. at 465. With that holding in hand, Jackson filed a pro se motion to correct illegal sentence in August 2012, arguing that he should be resentenced to no more than 40 years at hard labor. *Jackson*, 243 So. 3d at 1095. But, at the time, Louisiana courts did not understand *Miller* to apply retroactively to cases like Jackson's. *State v. Tate*, 130 So. 3d 829, 844 (La.

2013). The state trial court denied Jackson's motion in December 2013. *Jackson*, 243 So. 3d at 10.

Next, in *Montgomery v. Louisiana*, the Supreme Court held that *Miller* applies retroactively to defendants whose convictions and sentences were final prior to the decision in *Miller*. 136 S. Ct. at 736. *Miller* and *Montgomery* do not preclude life-without-parole sentences for "permanentl[y] incorrigib[le]" juvenile offenders. *Id.* at 734. But they do require that any *mandatory* life-without-parole sentence imposed on a juvenile offender be cured, either by affording consideration for parole eligibility or resentencing. *Id.* at 736.

Shortly after *Montgomery* was decided, Jackson filed another motion to correct illegal sentence in state court, again proposing a 40-year sentence. *Jackson*, 243 So. 3d at 1095. On June 21, 2016, the court rejected Jackson's proposal. *Id.* But, to bring Jackson's sentence into compliance with *Miller* and *Montgomery*, the court vacated his life-without-parole sentence on the murder conviction and imposed a sentence of life *with* the possibility of parole. *Id.* The court also ordered that this sentence run concurrently with Jackson's manslaughter sentence. *Id.* at 1095–96.

*Montgomery* reemerged just seven days later. On June 28, 2016, on remand in the *Montgomery* case, the Louisiana Supreme Court directed lower courts to conduct parole eligibility *hearings* for pre-*Miller* juvenile offenders sentenced to life without parole using two post-*Miller* Louisiana statutes: La. Code Crim. Proc. art. 878.1 (2013) and La. R.S. 15:574.4(E) (2013). *State v. Montgomery*, 194 So. 3d 606, 607–08 (La. 2016). Article 878.1 required district courts to conduct a hearing "[i]n any case where an offender is to be sentenced to life imprisonment for a conviction of first degree murder (R.S. 14:30) or second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense . . . to

determine whether the sentence shall be imposed with or without parole eligibility pursuant to the provisions of R.S. 15:574.4(E)." Section 15:574.4(E), in turn, provided the conditions under which persons serving life sentences for first- or second-degree murder committed under the age of 18 could become parole eligible.

Jackson once more challenged his sentence. In September 2016, the state court vacated the sentence imposed in June 2016 and set the matter for resentencing. *Jackson*, 243 So. 3d at 1096. At the subsequent October 2016 hearing, following the guidelines outlined by the Louisiana Supreme Court in *Montgomery* on remand, the state court re-imposed the same sentence: life imprisonment without the benefit of probation or suspension of sentence, but with the possibility of parole, to run concurrently with Jackson's 40-year manslaughter sentence. *Id.* The Louisiana appellate court affirmed Jackson's convictions and sentences for the second time, *id.* at 1095, and the Louisiana Supreme Court denied writs, *State v. Jackson*, 243 So.3d 565 (La. 2018). Jackson then petitioned the federal district court for a writ of habeas corpus, asserting that his murder sentence is unconstitutional. *Jackson v. Vannoy*, 2019 U.S. Dist. LEXIS 149165, at *1 (W.D. La. July 11, 2019). The district court denied both the petition and Jackson's proposed certificate of appealability. *Jackson v. Vannoy*, No. 19-cv-665, ECF No. 7 (W.D. La. Aug. 30, 2019); *id.*, ECF No. 13 (W.D. La. Oct. 2, 2019).

Jackson now seeks a certificate of appealability (COA) to appeal the district court's dismissal of his 28 U.S.C. § 2254 petition. He raises four issues: (1) whether the Due Process Clause forbids Jackson's modified sentence under a statute that does not authorize that sentence and provides no punishment that can constitutionally be applied to him; (2) whether the Due Process Clause forbids his sentence because Louisiana's second-degree murder statute, as applied to juveniles, fails to provide the constitutionally required notice concerning the potential punishment a defendant faces;

(3) whether Jackson's resentencing represents an unconstitutional application of an ex post facto law; and (4) whether Jackson's modified sentence is unconstitutionally disproportionate under the Eighth Amendment.

## II.

In order to obtain a COA to appeal the denial of a § 2254 petition, Jackson must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003). He can satisfy this standard only "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327. That being said, courts "do not require petitioner to prove, before the issuance of a COA, that some jurists would *grant* the petition for habeas corpus." *Id.* at 338 (emphasis added). After all, "a claim can be debatable even though every jurist of reason might agree, after the COA has been granted and the case has received full consideration, that petitioner will not prevail." *Id.* This "threshold" inquiry is more a peek under the hood than a full detail: it is performed "without 'full consideration of the factual or legal bases adduced in support of the claims.'" *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (quoting *Miller-El*, 537 U.S. at 336).

The court evaluates the debatability of Jackson's constitutional claims under the "highly deferential" standard of the Antiterrorism and Effective Death Penalty Act, which "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)). To prevail, a habeas petitioner must prove that the constitutional adjudication by the state court "resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). Clearly established federal law comprises "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state-court decision is contrary to clearly established federal law when it "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Id.* at 413. A state-court decision fails the "unreasonable application" prong if it "identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case," or if it "extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407.

Thus, to obtain a COA, Jackson must show that "jurists of reason could disagree with the district court's conclusion that the state court's decision was not [contrary to or] an unreasonable application of clearly established federal law and was not based upon an unreasonable determination of the facts in light of the evidence presented." *Halprin v. Davis*, 911 F.3d 247, 255 (5th Cir. 2018).

## A.

The first two issues that Jackson seeks to certify for appeal share the same premise: that his new sentence is without legislative authorization. Louisiana's second-degree murder statute prescribes only one possible penalty irrespective of the offender's age: *mandatory* "life imprisonment at

hard labor without benefit of parole, probation, or suspension of sentence." La. R.S. 14:30.1(B). Under *Miller* and *Montgomery*, that sentence cannot constitutionally be applied to those who were juveniles when they committed their underlying offenses, including Jackson.

For that reason, in 2013, the Louisiana Legislature passed two statutes—La. Code Crim. Proc. art. 878.1 and La. R.S. 15:574.4—that aimed to cure unconstitutional life-without-parole sentences through hearings on consideration for parole eligibility. But Jackson argues that these provisions do not cure the constitutional defect in his situation. First, he notes that neither statute "embed[s] . . . a specific range of punishment" in the statute governing the substantive offense of second-degree murder, which to this day mandates life without parole. Second, Jackson stresses that, at the time of his October 2016 resentencing, the two statutes applied only prospectively to new prosecutions postdating the statutes' 2013 effective dates. Jackson takes this to mean that the Louisiana Supreme Court lacked the power to order that the statutes be applied retroactively to cases like his. As a result, Jackson argues, the "statutory text" neither gives "fair notice of the substantive penalty with a specific range for the offense" nor authorizes the particular "substantive penalty" that has been imposed on Jackson. This argument is not without some logical appeal.

It also finds some support in Supreme Court precedent. The Court has instructed more than once, after all, that "statutes fixing sentences must specify the range of available sentences with sufficient clarity" if they are to pass constitutional muster. *Beckles v. United States*, 137 S. Ct. 886, 892 (2017) (internal quotation marks and citations omitted). And "[i]n our system, so far at least as concerns the federal powers, defining crimes and fixing penalties are legislative, not judicial, functions." *United States v. Evans*, 333

U.S. 483, 486 (1948).[1] Louisiana's system operates much the same way. *See* La. R.S. 15:321(a) ("The enactment of statutes defining criminal offenses and the establishment of ranges of penalties for those offenses is a matter of substantive law solely within the prerogative of the legislature. The determination and imposition of sentence in particular cases is generally the function of the sentencing court, subject to appellate review and to mandatory sentences provided by law."). The upshot of this separation of powers is that, "[a]bsent a statutory exception," a court typically "lacks authority to impose a sentence below th[e] [mandatory] minimum." *United States v. Sealed Appellee*, 887 F.3d 707, 709 (5th Cir. 2018); *see also Williams v. New York*, 337 U.S. 241, 247 (1949) (noting that a sentencing judge's broad discretion to impose a sentence is limited by the "fixed statutory or constitutional limits [regarding] the type and extent of punishment after the issue of guilt" has been resolved); *State v. Guidry*, 221 So. 3d 815, 824 (La. 2017) (observing that "legislatively-determined mandatory minimum sentences . . . remove[] the discretion historically afforded to judges during sentencing").

The thrust of Jackson's argument has met with success elsewhere. In *United States v. Under Seal*, the federal government attempted to prosecute a juvenile offender as an adult under a federal statute that prohibits murder in aid of racketeering. 819 F.3d 715, 717 (4th Cir. 2016). That statute provides for only two punishments: death or life without parole. *Id.* at 718, 719 & n.4 (citing U.S.C. § 1959(a)(1)). Like Louisiana's second-degree murder statute,

---

[1] *See also Harris v. United States*, 536 U.S. 545, 557 (2002) (explaining that defining criminal conduct, including its appropriate punishment, is "a task generally left to the legislative branch"); *Mistretta v. United States*, 488 U.S. 361, 364 (1989) ("Congress, of course, has the power to fix the sentence for a federal crime, and the scope of judicial discretion with respect to a sentence is subject to congressional control." (citations omitted)).

therefore, the federal statute does not authorize any punishment that may be constitutionally imposed on juvenile offenders. The government conceded as much before the Fourth Circuit but argued that the court could sever the unconstitutional mandatory minimum of life imprisonment and employ the sentencing range of any term of years up to a discretionary maximum sentence of life applicable to a separate kidnapping offense in the same subsection. *Id.* at 721. But the court rejected that invitation as "nothing less than judicial legislation pure and simple." *Id.* at 725–26 (citation omitted). Because the statute did not authorize any penalty that could constitutionally be imposed on the juvenile defendant and did not provide fair warning of any judicially crafted lesser penalty,[2] the court held that the prosecutions could not constitutionally proceed. *Id.* at 726–28.

This court has not squarely addressed the subject, but it has observed that the general point pressed by Jackson presents "an important constitutional question that may deserve a thorough review when the appropriate time comes." *Sealed Appellee 1 v. Sealed Juvenile 1*, No. 15-20262, slip op. at 6 (5th Cir. Mar. 9, 2018) (unpublished) (declining, on ripeness grounds, to reach constitutionality of prosecution of juvenile under federal statute containing mandatory minimum of life imprisonment). On first blush, that time might appear to be at hand: it seems at least debatable whether a juvenile offender may constitutionally be resentenced to a punishment that,

---

[2] *See Under Seal*, 819 F.3d at 726 ("Our concerns about lack of notice arise from the Government urging us to look outside the express language of the stated offense for an acceptable alternative penalty. When the crime at issue in this case occurred, Congress unambiguously informed individuals that murder in aid of racketeering was punishable by death or mandatory life imprisonment. Congress provided for no other penalty. However, a juvenile like the Defendant could not be sentenced to either of those punishments after *Miller*. Nor would that juvenile have notice at the time of the alleged crime that he could be subject to any other punishment, such as imprisonment to a term of years.").

while consistent with *Miller*, is not authorized by the statute governing the substantive criminal offense. *Compare Under Seal*, 819 F.3d at 726 (supporting the negative side of the debate),[3] *with United States v. Conyers*, 227 F. Supp. 3d 280, 290–91 (S.D.N.Y. 2016) (supporting the affirmative side by rejecting juvenile offender's due process claim and allowing the government to proceed with prosecuting defendant as an adult under the federal murder-in-aid-of-racketeering statute).

Nonetheless, the Louisiana Legislature has made other arrangements. Article 878.1 of the Code of Criminal Procedure, as it existed when Jackson was resentenced, required a state trial court to conduct a hearing before imposing a life-without-parole sentence on a juvenile murder defendant. *State v. Evans*, 245 So. 3d 1112, 1117–18 (La. Ct. App. 2018). Section 15:574.4(E), in turn, "provided the conditions, including serving 35 years (now 25 years) of the sentence imposed, before the defendant could apply to the parole board for parole consideration." *Id.* at 1118.

But the same year these statutes were enacted, the Louisiana Supreme Court held that they applied only prospectively to new offenders not yet sentenced. *See Tate*, 130 So. 3d at 844. Subsequent efforts to amend the statutes to make them retroactive stalled during the 2016 legislative session. *Montgomery*, 194 So. 3d at 608. So, at the time of Jackson's resentencing, these statutes were employed solely by virtue of the Louisiana Supreme

---

[3] The Fourth Circuit did point out that the rule for juveniles prosecuted post-*Miller* may differ from that for those prosecuted pre-*Miller*. *Under Seal*, 819 F.3d at 728 ("Whatever the appropriate remedies may be for those juvenile offenders who were convicted and sentenced prior to *Miller*, they stand on entirely different ground than the Defendant. This case only requires considering whether initiating prosecution of a juvenile for murder in aid of racketeering alleged to have occurred after *Miller* would be unconstitutional because the sentencing court could not constitutionally impose the only two authorized penalties for that offense."). Nevertheless, the Fourth Circuit's rationale can reasonably be read to broadly support Jackson's position.

Court's "guidance" in lieu of legislative action. *Id.* It was not until August 2017—the year after Jackson's resentencing—that the Legislature amended Article 878.1 and Section 15:574.4 to make them retroactive. *State v. Brooks*, 247 So. 3d 1071, 1074 (La. Ct. App. 2018). So, Jackson was indeed resentenced under a substantive criminal statute to a penalty not authorized by that statute, at a time when no other supplemental statute authorized courts to modify the sentences of defendants in Jackson's position to bring them into compliance with *Miller* (that only came later).

The problem for Jackson is that, irrespective of any defects in his October 2016 resentencing and any putative relief in the form of another resentencing under a now-constitutional statutory scheme, the current, retroactive versions of Article 878.1 and Section 15:574.4 *require* that he receive the *exact same* sentence and consideration for parole eligibility. Under the 2017 amendments, Section 15:574.4(G) governs Jackson's parole eligibility.[4] *See id.* That section provides that, so long as certain conditions are met, a person serving a life sentence for second-degree murder is entitled to parole eligibility "*[n]otwithstanding any provision of law to the contrary*." La. R.S. 15:574.4(G) (2017) (emphasis added). In other words, even though the second-degree murder statute does not itself authorize Jackson's modified sentence, a separate, overriding, retroactive provision now does. And these provisions combine to mandate the same sentence—life imprisonment with the possibility of parole, with parole eligibility to be determined under Section 15:574.4—as Jackson's operative sentence. That result obtains

---

[4] La. Code Crim. Proc. art. 878.1(b)(2)(a) ("If an offender was indicted prior to August 1, 2017, for the crime of . . . second degree murder (R.S. 14:30.1) where the offender was under the age of eighteen years at the time of the commission of the offense and a hearing was held pursuant to this Article prior to August 1, 2017, the following shall apply: (a) If the court determined at the hearing that was held prior to August 1, 2017, that the offender's sentence shall be imposed with parole eligibility, the offender shall be eligible for parole pursuant to R.S. 15:574.4(G).").

automatically and without any rehearing. *See* La. Code Crim. Proc. art. 878.1(b)(2)(a) ("If the court determined at the hearing that was held prior to August 1, 2017, that the offender's sentence shall be imposed with parole eligibility, the offender *shall* be eligible for parole pursuant to R.S. 15:574.4(G)." (emphasis added)). Accordingly, Jackson's "argument that, in granting him parole eligibility, the trial court exceeded its authority, and violated due process and the separation of powers[,] is moot." *Brooks*, 247 So. 3d at 1074; *see also Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979) ("[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.") (citation omitted).

"Mootness, of course, is a fundamental bar to judicial review that must be accounted for at all stages of a proceeding, and applies in habeas as in any other type of litigation"—including at the COA stage. *Miller v. Glanz*, 331 F. App'x 608, 610 (10th Cir. 2009) (unpublished opinion) (denying COA on mootness grounds). *See also Norman v. Stephens*, 817 F.3d 226, 234 (5th Cir. 2016) (same). Even if Jackson were correct about the first two alleged constitutional flaws in his October 2016 resentencing, his claims are moot. *See, e.g.*, *Perkins v. Cain*, 2018 U.S. Dist. LEXIS 48427, at *6 (M.D. La. Feb. 28, 2018) ("Petitioner's claim has since been rendered moot because Petitioner has effectively been statutorily re-sentenced by operation of recent amendments to Louisiana law [Article 878.1 and Section 15:574.4] such that he is now eligible for parole consideration in accordance with certain statutory requirements."). Jackson therefore is not entitled to a COA on these issues.

## B.

Jackson next invokes the Ex Post Facto Clause. Article I, § 10 of the United States Constitution prohibits the ex post facto application of a criminal law by the state. Jackson argues that his sentence of life

imprisonment with parole eligibility under La. R.S. 15:574.4 violates this prohibition. This one is not up for debate: Jackson is wrong.

Retroactive application of a law violates the Ex Post Facto Clause only if it: (1) "punish[es] as a crime an act previously committed, which was innocent when done;" (2) "make[s] more burdensome the punishment for a crime, after its commission;" or (3) "deprive[s] one charged with crime of any defense available according to law at the time when the act was committed." *Collins v. Youngblood*, 497 U.S. 37, 52 (1990). Only the second could possibly apply here; and it does not. *See Peugh v. United States*, 569 U.S. 530, 539 (2013) (retrospective application of law only satisfies this category if it "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed" (quoting *Calder v. Bull*, 3 U.S. 386, 390 (1798))). The Supreme Court's pronouncements in *Miller* and *Montgomery* necessitated a change in Louisiana's sentencing scheme for second-degree murder. While the state court did indeed retroactively apply Louisiana's new sentencing scheme to Jackson, it did not impose an increase in penalty or any other disadvantage. Quite the opposite: Jackson *benefitted* by receiving a less burdensome life sentence that affords him eligibility for parole consideration after 25 years' imprisonment. La. R.S. 15:574.4(E)(1)(a). Jackson therefore is not entitled to a COA on this issue either.

## C.

The final issue that Jackson seeks to certify for appeal is whether his sentence is unconstitutionally disproportionate under the Eighth Amendment. Jackson argues that Article 878.1 and Section 15:574.4 contravene *Miller* and *Montgomery* by refusing district courts any discretion to consider mitigating factors and impose individualized sentences less than

life with the opportunity for parole. He demands a resentencing that takes his "life and characteristics" into account.

Jackson misapprehends the constitutional right recognized in *Miller*. The Supreme Court held only that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison *without* possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479 (emphasis added). It does not disallow sentences of life imprisonment *with* the opportunity for parole for a juvenile homicide offender. Nor is it clearly established that courts must consider mitigating factors of youth before imposing such a sentence. Presently, all that is clearly established is that a sentencing court must consider youth-related mitigating factors in those cases in which it *does* impose a juvenile life-without-parole sentence. *Id.*; *see also Montgomery*, 136 S. Ct. at 733. Jackson's case is not among them.

\* \* \*

For the foregoing reasons, IT IS ORDERED that Jackson's motion for a certificate of appealability is DENIED.

STEPHEN A. HIGGINSON
*United States Circuit Judge*